IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GARY G. HAMPTON, JR.,

Plaintiff,

v.

ALKIRE, et al.,

Defendants.

No. 2:22-CV-01418-DJC-DMC-P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion to dismiss and to sever mis-joined claims. See ECF No. 21. Plaintiff was granted an extension of time to respond to Defendants' motions by March 31, 2024. See ECF No. 25. To date, Plaintiff has not filed a response.

## I. BACKGROUND

### A. Plaintiff's Allegations

This action proceeds on Plaintiff's original complaint. See ECF No. 1. Plaintiff names the following as defendants: (1) Alkire, a Lieutenant at High Desert State Prison (HDSP); (2) Carillo, a Captain at HDSP; (3) Spearman, the Warden at HDSP; and (4) R. Sylva, a Sergeant at HDSP. See id. at 2. Plaintiff alleges two claims for relief alleging different instances of Eighth

Amendment safety violations at HDSP in 2019.

Claim I

In his first claim, Plaintiff states he was transferred to building B5, which is inhabited by violent security threat group (S.T.G.) inmates. See ECF No. 1, pg. 3. Plaintiff alleges that he received threats from an S.T.G. inmate and reported the occurrence to Defendant Sylva. See id. Plaintiff contends that Defendant Sylva tried to have Plaintiff sent back to B5, "until mental health got involved." Id. Plaintiff alleges that, despite viewing Audio-Video Surveillance System (AVSS) footage of the incident, Defendant Alkire falsely documented that Plaintiff had never had contact with the S.T.G. inmate who had threatened Plaintiff. See id. Plaintiff then alleges that Defendant Alkire recommended Plaintiff be returned to B-yard, and the recommendation was granted. See id.

Plaintiff next contends that Defendant Alkire would not allow Plaintiff to file an A-12 report against the S.T.G. inmate who Plaintiff was celling with, despite the S.T.G. inmate in question "put[ting] his hands on [Plaintiff]." Id. Defendant Alkire then allegedly tried to put Plaintiff back in the same cell with the aforementioned inmate, but Plaintiff refused to leave the program office cage due to being "in fear for [his] life." See id. at 3. Plaintiff states that as a result, he was falsely charged with threatening prison staff and was re-housed in administrative segregation with a D.A. referral. See id. Plaintiff posits that the B-Yard Program Office AVSS confirms that Defendant Alkire made false statements in the rules violation report (RVR) regarding Plaintiff's conduct in the aforementioned incident. See id.

Lastly, Plaintiff alleges that Defendant Spearman had full access to the aforementioned AVSS, was aware of Plaintiff's concerns regarding Plaintiff's safety, and refused to protect Plaintiff or "overturn" the aforementioned RVR despite knowing its contents were false. See id. As a result of the above, Plaintiff maintains he can no longer sleep regularly without nightmares of being killed by police, that he suffers from post-traumatic stress disorder (PTSD), and lives in a state of constant fear and anxiety when forced to be around police, correctional officers and violent S.T.G. inmates. See id.

/ / /

Claim II

In his second claim, Plaintiff alleges Defendant Spearman signed off on the "I.C.C. decision to place [Plaintiff] on HDSP A-Yard, pending transfer," which Plaintiff alleges was a threat to Plaintiff's safety. Id. at 4. Plaintiff contends that Correctional Officer Folsom wrote a "Safety Concern Report" communicating that Plaintiff's life was in danger on B-Yard by S.T.G. inmates, and that Defendant Spearman knew that S.T.G. inmates communicate between B-Yard and A-Yard. Id. Plaintiff argues that, for safety reasons, he should have been kept in administrative segregation until he was transferred from HDSP. See id. Plaintiff alleges he reported his concerns about A-Yard to Defendant Carrillo, but that Carrillo did nothing to protect Plaintiff and, as a result, Plaintiff was "victimized repeatedly by both inmates [and] officers." Id.

Plaintiff next alleges that, when he was informed by Defendant Carrillo of his transfer to Tehachapi State Prison, Plaintiff informed Defendant that Plaintiff had an "A-12 enemy at Tehachapi" and that the prison was designed for "violent 1-80 inmates" and Plaintiff only "qualified for 2-70." Id. Plaintiff alleges Defendant Carrillo advised Plaintiff to address his safety concerns at Tehachapi. See id. Because of his transfer, Plaintiff states that he decided to end his own life, and that Defendant Carrillo refused to address Plaintiff's safety concerns or allow Plaintiff to speak to mental health staff. See id. When Plaintiff retrieved a razor blade and demanded to speak to mental health staff, Plaintiff alleges Defendant Carrillo laughed and told Plaintiff to kill himself. See id. Plaintiff allegedly began cutting his own wrists and other parts of his body, and that this incident can be viewed on AVSS footage. See id. As a result of the incident, Plaintiff states that he was moved to "C.T.C. Hospital pending E.O.P. evaluation [sic]." Id. Plaintiff contends that he was "deemed to be E.O.P" at his E.O.P evaluation, and "later confirmed by CRS to qualify to be placed on E.O.P yard no higher than 2-70." Id. Plaintiff contends the above incident resulted in scars all over Plaintiff's body, PTSD, nightmares of being killed by police, constant anxiety, and fear of retaliation by both officers and inmates. See id.

/ / /

/ / /

/ / /

**B. Procedural History**

On July 27, 2023, the Court determined that Plaintiff's complaint was appropriate for service on his Eighth Amendment claims against all defendants. See ECF No. 12. Defendants waived service of process on August 15, 2023. See ECF No. 16. The currently pending unopposed motion to dismiss was filed on October 2, 2023. See ECF No. 21.

## II. DISCUSSION

In their motion, Defendants argue: (1) Claim I should be dismissed because Plaintiff has not alleged a physical injury as required under 42 U.S.C. § 1997e(e) for claims of mental or emotional injury suffered while in custody; and (2) Claims I and II are mis-joined because they arise from separate sets of transactions and occurrences. See ECF No. 21-1.

**A. Mis-Joinder**

Defendants argue that Plaintiff's Claim I and Claim II are mis-joined and should be severed.

Federal Rule of Civil Procedure 18(a) limits the joinder of claims, whereas Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit. Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Rule 20(a)(2) states: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Courts have recognized that when multiple parties are named, the analysis under Rule 20 precedes that under Rule 18. See Herndon v. Mich. Dep't of Corr., 2021 WL 1559156 at *2 (W.D. Mich. April 12, 2021).

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

/ / /

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.
>
> Id. (citing 7 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1655 (3d ed. 2001), quoted in Proctor v. Applegate, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and Garcia v. Munoz, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); see also United States v. Mississippi, 380 U.S. 128, 142–43 (1965)).

Permissive joinder under Rule 20 "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 558 F.2d 914, 917 (9th Cir. 1997). The purpose of Rule 20 is to address the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). Rule 20 sets forth two specific requirements for permissive joinder: "(1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all parties must arise in the action." Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980) (citing League to Save Lake Tahoe, 558 F.2d at 917).

As to the first requirement, courts assess the facts of each case individually to determine whether joinder is sensible in light of the underlying policies of permissive party joinder. Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997). "The 'same transaction' requirement of Rule 20 refers to 'similarity in the factual background of a claim; claims that arise out of a systematic pattern of events' and have a 'very definite logical relationship.'" Hubbard v. Hougland, 2010 WL 1416691, at *7 (E.D. Cal. Apr. 5, 2010) (quoting Bautista v. Los Angeles County, 216 F.3d 837, 842-843 (9th Cir. 2000)). Additionally, "the mere fact that all [of a plaintiff's] claims arise under the same general law does not necessarily establish a common question of law or fact." Coughlin, 130 F.3d at 1351.

/ / /

/ / /

As to the second requirement, commonality under Rule 20 is not a particularly stringent test. See Johnson v. Shaffer, 2013 WL 140115, at *2 (E.D. Cal. Jan. 10, 2013) (citing Bridgeport Music, Inc. v. 11 C Music, 202 F.R.D. 229, 231 (M.D. Tenn. 2001)). The Rule requires only a single common question, not multiple common questions. Fed. R. Civ. P. 20 ("any question of law or fact common to . . ."). "The common question may be one of fact or of law and need not be the most important or predominant issue in the litigation." Johnson, 2013 WL 140115, at *2 (citing Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)). And even if a court finds that the requirements have been met, "a district court must examine whether permissive joinder would 'comport with principles of fundamental fairness' or would result in prejudice to either side." Coleman v. Quaker Oats Company, 232 F.3d 1271, 1296 (9th Cir. 2000) (citing Desert Empire Bank, 623 F.2d at 1375 (finding that the district court did not abuse its discretion when it severed certain plaintiff's claims without finding improper joinder)).

Under Rule 20(b), the district court may sever claims or parties in order to avoid prejudice. Fed. R. Civ. P. 20(b). Courts have also exercised their discretion to sever where "[i]nstead of making the resolution of [the] case more efficient . . . joinder would instead confuse and complicate the issues for all parties involved." Rodriguez v. Tilton, 2013 WL 1163796, at *6 (E.D. Cal. Mar. 20, 2013) (quoting Wynn v. Nat'l Broad. Co., 234 F. Supp. 2d 1067, 1088 (C.D. Cal. 2002) (finding that even where Rule 20 requirements for joinder are satisfied, the court may exercise its discretion "to sever for at least two reasons: (1) to prevent jury confusion and judicial inefficiency, and (2) to prevent unfair prejudice to the [defendants]")) (citing Coleman, 232 F.3d at 1350).

If, however, the requirements for permissive joinder are not satisfied, courts may look to Rule 21. Coughlin, 130 F.3d at 1350. Under Rule 21, where a court finds misjoinder, it may "drop a party" or "sever any claim against a party" as it considers just, but it may not dismiss the entire action. Fed. R. Civ. P. 21. In other words, where there is misjoinder, a court "has two remedial options: (1) mis-joined parties may be dropped 'on such terms as are just'; or (2) any claims against mis-joined parties 'may be severed and proceeded with separately.'" DirecTV, Inc. v. Leto, 467 F.3d 842, 845 (3d Cir. 2006); see, e.g., Gilmore v. Bauder, No. 1:19-CV-01229-

NONE-SKO, 2021 WL 634731 at *3 (E.D. Cal. Feb. 18, 2021) (dismissing severed claims without prejudice); see also Harrison v. Linde, No. 2:12-CV-2000 KJM CKD, 2013 WL 3872833 at *1 (E.D. Cal. July 25, 2013) (directing the clerk of court to assign a new case number for the severed claims). In determining which of the two remedial options should be applied, the court should consider the following factors, inter alia: (1) the relevant statute of limitations; (2) where the parties are in the discovery process; and (3) the past and future expenditures of both the court and the parties. See Robinson v. Geithner, No. 1:05-CV-01258-LJO-SKO, 2011 WL 66158 at *10 (E.D. Cal. Jan. 10, 2011). The remedial option the court chooses could have critical effects.

For example, "[w]hen a court 'drops' a defendant under Rule 21, that defendant is dismissed from the case without prejudice." DirecTV, Inc., 467 F.3d at 845 (citing Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1068 (3d Cir. 1979)); see also Elmore v. Henderson, 227 F.3d 1009, 1011–12 (7th Cir. 2000) (Posner, J.). "When that occurs, the 'statute of limitations is not tolled' because we treat the initial complaint 'as if it never existed." DirecTV, Inc., 467 F.3d at 845 (citing Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir. 2005). However, "when a court 'severs' a claim against a defendant under Rule 21, the suit simply continues against the severed defendant in another guise. The statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period." DirecTV, Inc., 467 F.3d at 845 (citing White v. ABCO Eng'g Corp., 199 F.3d 140, 145 n. 6 (3d Cir. 1999)); see also Jenkins v. Lares, No. 2:13-CV-2273-DB, 2017 WL 3381809 at *6-7 (E.D. Cal. Aug. 7, 2017).

Additionally, severance or dismissal of mis-joined parties in cases brought by inmates under 28 U.S.C. § 1915(g) ensures that prisoners pay the required filing fees for each unrelated claim that should be brought in separate actions. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). The inmate plaintiff in George brought a 50-claim, 24-defendant lawsuit and sought one fee waiver for the entire case. Id. In severing the case, the Court of Appeals for the Seventh Circuit noted that the inmate "was trying not only to save money, but also to dodge [28 U.S.C. § 1915(g)]." Id. Thus, the rule requiring severance of unrelated claims against unrelated defendants "is not only intended to avoid confusion that arises out of bloated lawsuits, but also to

prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act." Blair v. CDCR, et al., No. 1:14-cv-01156-LJO-SAB, 2016 WL 5660320, at *14 (E.D. Cal. Jul. 15, 2016), report and recommendation adopted by, No. 1:14-cv-01156-LJO-SAB, 2016 WL 5470190 (E.D. Cal. Sept. 28, 2016).

The actual severance of claims may be effectuated by assigning claims to case numbers. See Jenkins, 2017 WL 3381809 at *7. For example, in Jenkins the court severed the case into four separate actions, i.e., four separate claims. Id. The court assigned the case number of the original action to the plaintiff's first claim. Id. The court then directed the clerk of court to assign the three remaining claims to three different case numbers. Id.

Here, Defendants argue that Plaintiff's two failure-to-protect claims arise from distinct events and pursuant to Federal Rule of Civil Procedure Rule 20 Plaintiff may not join these two claims as they do not arise out of the same set of transactions or occurrences and have different questions of fact. See ECF No. 21-1, pg. 8. According to Defendants:

> In this action, Plaintiff alleges two distinct failure-to-protect claims under the Eighth Amendment. Claim I generally alleges that Defendants Sylva, Alkire, and Warden Spearman failed to protect Plaintiff from other inmates while Plaintiff was incarcerated on the B-Yard at HDSP until Plaintiff was removed to Administrative Segregation on August 2, 2019. (ECF No. 1 at 3.) Claim II picks up after Plaintiff was transferred to the A-Yard on August 8, 2019. (*Id.* at 4.) It alleges that Defendants Carrillo and Warden Spearman failed to protect Plaintiff from certain inmates and correctional officers and, further, on October 8, 2019, Defendant Carrillo failed to protect Plaintiff by not intervening in his suicide attempt, which was motivated by Plaintiff's fear of being transferred to Tehachapi and unrelated to any prior failure-to-protect allegation. (*Id.*)
>
> ECF No. 21-2, pg. 8.

Defendants argue that Defendant Carrillo was not involved in events related to Claim I and Defendants Sylva and Alkire were not involved in events related to Claim II. See id. Defendants further argue that similarities in the nature of the claims, the fact that Defendants worked together, and Defendant Spearman's involvement in both claims are all insufficient to support joinder of the claims. See id. at 8-9.

/ / /

/ / /

Defendants' argument is well-taken. Plaintiff's claims appear to arise from separate occurrences without common questions of fact. Claim I involves events which occurred while Plaintiff was housed on B-Yard through August 2, 2019. See ECF No. 1, pg. 3. Claim II involves separate events which occurred thereafter while Plaintiff was housed on A-Yard after August 8, 2019. See id. at 4. Accordingly, Claim I should be severed from Claim II with both claims proceeding in separate actions (Claim I litigated in this action with Claim II opened as a new action).

**B. Physical Injury**

Defendants argue that Claim I should be dismissed pursuant to 42 U.S.C. § 1997e(e) because Plaintiff has not alleged a physical injury.

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at

570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

Under the Prison Litigation Reform Act, "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The alleged "physical injury [] need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002). In this case, Plaintiff alleges mental and emotional injuries in both claims. In Claim II, Plaintiff alleges a physical injury, specifically permanent scars, which is more than a de minimis injury. Thus, the Court finds that Plaintiff has complied with § 1997e(e) as to Claim II. Defendants appear to concede as much by limiting their argument to Claim I.

As to Claim I, Defendants argue that, because Plaintiff failed to state what physical injuries resulted from the incident between Plaintiff and the S.T.G. inmate, if any, Plaintiff may not proceed on Claim II which alleges emotional or mental injury absent an allegation of a physical injury which is not de minimis. See id. The Court agrees. While Plaintiff does allege in Claim I that a physical altercation between himself and another inmate, he does not specify whether any physical injury resulted. See ECF No. 1, pg. 15. Accordingly, Plaintiff's claim is deficient as to Claim I under § 1997e(e). Plaintiff should be provided leave to amend Claim I.

**III. CONCLUSION**

Based on the foregoing, the undersigned recommends as follows:

1. Defendants' unopposed motion to dismiss and sever mis-joined claims, ECF No. 21, be GRANTED.

2. Claim I be severed from Claim II, which shall proceed in the context of a separate action to be opened by the Clerk of the Court based on Plaintiff's original complaint.

3. Claim I in this action be DISMISSED with leave to amend to allege an actual injury.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 12, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE